IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| RICHARD ENYART and DEANNE ENYART, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 150446N |
| v. | ) ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) | |
| Defendant. | ) ) | **FINAL DECISION** |

The court entered its Decision in the above-entitled matter on August 17, 2016. Plaintiffs

timely filed a Statement for Costs and Disbursements (Statement) on August 31, 2016,

requesting their costs in the amount of $252 for the court filing fee. Defendant did not file an

objection to Plaintiffs' Statement within the 10-day period provided by Tax Court-Rule

Magistrate Division (TCR-MD) 16 C(2)(a). The court's analysis and determination of Plaintiffs'

request for costs and disbursements is contained in section III. The court's Final Decision

otherwise incorporates its Decision without change.

Plaintiffs appeal the Department of Revenue's (the Department) Notice of Deficiency

dated July 24, 2015, for the 2011 tax year. The parties filed Stipulated Facts and Exhibits 1

through 24. The parties filed cross motions for summary judgment, responses, and replies.

I. STATEMENT OF FACTS

On August 13, 2014, the Department's auditor (the auditor) sent notice to Plaintiffs "that

their 2011 tax return had been selected for audit." (Stip Facts at ¶3.) The auditor requested

substantiation of Schedule A and Schedule F expenses for mortgage interest, medical deductions,

charitable donations, and miscellaneous itemized deductions. (*Id.*) Despite phone calls made in

August and September 2014, Plaintiffs and the auditor failed to connect for a conversation. (*See id.* at ¶¶ 4-7.) On September 15, 2014, the auditor issued a Proposed Auditor's report for the 2011 tax year disallowing Plaintiffs' Schedule F and Schedule A itemized deductions. (*Id.* at ¶8.) The auditor requested that Plaintiffs contact him by September 29, 2014, to notify him whether they agreed with the adjustments. (Ex 4.) Plaintiff Deanne Enyart (Deanne[1]) "called and spoke with [the auditor] for 24 minutes at 8:41 in the morning" of September 17, 2014, although the auditor has no record of that phone call. (*Id.* at ¶10.) Plaintiffs retained counsel and Plaintiffs' counsel faxed a Power of Attorney form to the auditor on September 29, 2014, along with a cover letter requesting a phone call to arrange a meeting. (*Id.* at ¶¶14-15; Ex 7.) The auditor has no record of receiving the fax from Plaintiffs' counsel. (Stip Facts at ¶15.)

More missed communications occurred between Plaintiffs' counsel and the auditor in October and November 2014. (*See* Stip Facts at ¶¶17-20.) On January 16, 2015, Plaintiffs' counsel and the auditor spoke and agreed to extend the period of limitation for issuing a Notice of Deficiency. (*Id.* at ¶22.) On February 23, 2015, Plaintiffs' counsel "faxed the signed Agreement Extending Period of Limitation for Issuing Notice of Deficiency, extending the period to July 31, 2015." (*Id.* at ¶28.)

On March 16, 2015, Plaintiffs' counsel, Deanne, and the auditor met and Deanne "provided spreadsheets detailing Schedule F and Schedule A unreimbursed employee business expenses with corresponding receipts. [She] also provided a copy of [Richard's] employer reimbursement policy and home office worker policy, as well as a floorplan of the home office and photographs of the home office." (Stip Facts at ¶30.) Deanne "conceded that some expenses

---

[1] When referring to a party in a written decision, it is customary for the court to use the party's last name. However, in this case, the court's Decision references two individuals with the same last name, Enyart. To avoid confusion, the court will use the first name of the individual being referenced.

are not deductible, but contested [the auditor's] treatment of other expenses" including his "classification of work done to home office stairs" and Deanne's "use of her vehicle for business purposes." (*Id.*) Plaintiffs' counsel and the auditor "agreed that some deductions involved genuine issues of law that could be discussed over the telephone, after both parties had a chance to conduct research." (*Id.*) A disagreement ensued over the auditor request to conduct a site visit to Plaintiffs' home office. (*Id.* at ¶¶30-35.)

On June 9, 2015, the auditor called Plaintiffs' counsel "and left a message, requesting documents to substantiate [Plaintiffs'] basis in their home. [He] sent a letter requesting documentation of the purchase price for [Plaintiffs'] home. [He] requested a response by June 17." (Stip Facts at ¶36.) On June 16, 2015, Plaintiffs' counsel "faxed a letter to [the auditor] regarding the purchase price for the property." (*Id.* at ¶38.) That letter identified Plaintiffs' original land purchase price, the amount of Plaintiffs' construction loan, and an estimate of Plaintiffs out-of-pocket construction costs, and asserted that Plaintiffs' claimed basis of $276,905 "appears reasonable in light of all currently available information." (Ex 17.) Plaintiffs' counsel attached to the letter the buyer's settlement statement, the borrower's final closing statement, and an appraisal of Plaintiffs' home as of April 16, 2003. (*Id.*)

On June 24, 2015, the auditor "sent a proposed auditor's report and provided a deadline of July 8 to submit additional documentation." (Stip Facts at ¶39.) The Proposed Auditor's Report made a $16,651 adjustment to Plaintiffs' Schedule A itemized deductions, for a tax-to-pay of $1,499. (Ex 18 at 2.) The auditor adjusted the following categories: medical expenses, taxes, mortgage interest, charitable contributions, and miscellaneous itemized deductions. (*Id.* at 3.) Plaintiffs had claimed a deduction of $12,279 for the business use of their home for Richard's office. (*Id.* at 5.) The auditor treated the work done on Plaintiffs' stairs as a

capital improvement, recalculated the basis of Plaintiffs' home to be $120,232, and allowed

Plaintiffs depreciation of $3,083. (*Id.* at 6.)

On July 7, 2015, Plaintiffs' counsel "had a letter hand delivered to [the auditor's] office.

The letter contained specific objections to the proposed auditor's report and supporting

documentation." (Stip Facts at ¶ 40.) Plaintiffs' counsel's letter identified items to be corrected,

requested clarification on the source of specific figures, and expressed disagreement with certain

adjustments. (Ex 19 at 1-5.) Attached to the letter were 70 pages of supporting documentation,

the majority of which was comprised of "a spreadsheet showing the total costs of constructing

the home, along with receipts, showing total out-of-pocket construction expenses in the amount

of $95,415 as well as costs paid with a construction loan in the amount of $114,581, for a total of

$209,996." (Ex 19 at 3, 13-66.) The additional attached documentation was regarding Plaintiffs'

employment policies, tax preparation fees, and safe deposit box. (*Id.* at 8-12, 67-76.)

When Plaintiffs' counsel's July 7, 2015, letter was delivered to the auditor, Plaintiffs'

counsel "was told that [the auditor] would be out of the office until July 17 for a scheduled

vacation. [The auditor] had not previously indicated that he would be away from the office, and

did not coordinate with another auditor to manage the case while he was away." (Stip Facts at ¶

40.) On July 17, 2015, the auditor called Plaintiffs' counsel and

> "acknowledged that he had received [Plaintiffs' counsel's] letter and additional
> documentation. [He] had just returned from vacation, and needed to issue a final
> auditor's report that day in order to meet an internal deadline: once a final
> auditor's report is issued, it may take up to two weeks for a Notice of Deficiency
> to be sent out. [The auditor] agreed that some items in the proposed auditor's
> report may need to be corrected, but would not have time to go through * * * all
> of the documentation that had been provided to him. [He] stated that if the
> taxpayers would not agree to another extension of the Period of Limitation for
> Issuing a Notice of Deficiency, some issues would have to be addressed through
> the administrative appeals process. [Plaintiffs' counsel] did not agree to extend
> the period of limitation, but consented to a Notice of Deficiency being issued
> based on the information already provided."

(*Id.* at ¶41.)  The auditor's notes for July 17, 2015, state, in part, that he told Plaintiffs' counsel that Plaintiffs "could either sign another extension or [he] must issue [the Notice of Deficiency], and [they] could deal with his letter as a written objection."  (*Id.*; *see also* Ex 20 at 1.)

The Auditor's Report was issued on July 17, 2015.  (Stip Facts at ¶42.)  That Auditor's Report made an $18,836 adjustment to Plaintiffs' Schedule A itemized deductions, resulting in a tax-to-pay of $1,696.  (Ex 21 at 2.)  It made no changes to the proposed adjustments for medical expenses, taxes, and charitable contributions.  (*Id.* at 3.)  It increased allowed mortgage interest from $7,408 to $7,518 and decreased allowed miscellaneous itemized deductions from $3,385 to $1,090.  (*Id.*)  The auditor's calculation of Plaintiffs' home office expense, including their basis in the home and depreciation, was unchanged from the proposed report.  (*Id.* at 6.)  The auditor allowed an additional expense for tax preparation fees and a safe deposit box.  (*Id.* at 7.)

The Department issued a Notice of Deficiency on July 24, 2015, based on the July 17, 2015, Auditor's Report.  (Stip Facts at ¶43; Ex 22.)  On August 6, 2015, Plaintiffs' counsel sent a letter to the auditor "objecting to the basis for the Notice of Deficiency."  (Stip Facts at ¶44.)  That letter stated asserted that the Notice of Deficiency was not issued in good faith and requested the auditor consider issuing an amended Notice of Deficiency.  (Ex 23 at 1, 3.)  On August 20, 2015, Plaintiffs' counsel sent a letter to the auditor "waiving [Plaintiffs'] right to conference or written objection and requesting immediate assessment."  (*Id.* at ¶45.)  Plaintiffs' counsel wrote in that letter that he had received no response from the auditor.  (Ex 24.)  The Notice of Deficiency Assessment was issued on September 29, 2015.  (Am Compl at 3.)

II.  ANALYSIS

The issue presented is whether the Department's Notice of Deficiency issued July 24, 2015, was "made in good faith and not for the purpose of extending the period of assessment"

under ORS 305.265(2)(c). [2] Plaintiffs assert that it was not and ask the court to find that the Notice of Deficiency "is invalid and of no force and effect, and that the Notice of Deficiency Assessment was not issued within the period of assessment." (Ptfs' Mot at 1.)

ORS 305.265(2) states:

"As soon as practicable after a report or return is filed, the department shall examine or audit it, if required by law or the department deems such examination or audit practicable. If the department discovers from an examination or an audit or a report or return or otherwise that a deficiency exists, it shall compute the tax and give notice to the person filing the return of the deficiency and of the department's intention to assess the deficiency, plus interest and any appropriate penalty. Except as provided in subsection (3) of this section, the notice shall:

"(a) State the reason for each adjustment;

"(b) Give a reference to the statute, regulation or department ruling upon which the adjustment is based;

"(c) Be certified by the department that the adjustments are made in good faith and not for the purpose of extending the period of assessment."

The exception in subsection (3) involves the correction of mathematical or clerical errors.

In *Preble v. Dept. of Rev.*, 331 Or 320, 326, 14 P3d 613 (2000), the Oregon Supreme Court held that a notice of deficiency is invalid if it fails to include the certification required under ORS 305.265(2)(c). The court observed that "[t]he statute evinces a legislative intent that makes the representation of good faith as important as good faith itself." *Id.* at 325. In a subsequent opinion considering whether the certification must include a hand signature, the court reviewed a change to the statutory language in 1971 removing the requirement that the notice of deficiency be "certified by the auditor" and replacing it with the current language, "certified by the department." *Dept. of Rev. v. Faris*, 345 Or 97, 102-03, 190 P3d 364 (2008). The legislative history of that amendment revealed that the Department of Revenue "wanted to eliminate any

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

handwritten signature requirement" so that it could use computers to send out notices. *Id.* at 104 (quoting *Dept. of Rev. v. Faris*, 19 OTR 178, 183-84 (2006)). The bill "returned to committee amid concerns about removing the entire certification requirement" and the outcome was the requirement that "the department" certify the notices rather than the auditor. *Id.*

Plaintiffs argue that, given the use of "and" in ORS 305.265(2)(c), they should prevail if they show either that the Notice of Deficiency was not issued in good faith or that it was issued for the purpose of extending the period of assessment. (Ptfs' Mot at 2.)

Plaintiffs bear the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).

A.      *Extending the Period of Assessment*

ORS 305.265(2)(c) requires that the Notice of Deficiency adjustments not be made "for the purpose of extending the period of assessment." Plaintiffs argue that "[t]he weight of the evidence shows that [the auditor] was out of time to consider all of the relevant information after his vacation and issued a Notice of Deficiency for the purpose of extending the period of assessment." (Ptfs' Mot at 5.) The stipulated facts and exhibits demonstrate that, on July 17, 2016, the auditor determined he had insufficient time to review the additional documentation submitted by Plaintiffs and requested that Plaintiffs agree to extend the period of limitation. The auditor stated to Plaintiffs that he would issue the Notice of Deficiency if they did not agree to the extension. The auditor's communication to Plaintiffs reveals that he issued the Notice of Deficiency at least in part to avoiding missing the period of limitation. However, the period of limitation for giving notice of deficiency is not "the period of assessment."

/ / /

ORS 314.410 provides the applicable period of limitation for the Department to issue a notice of deficiency. ORS 314.410(1) permits the Department to "give notice of deficiency as prescribed in ORS 305.265" at "any time within three years after the return was filed[.]" ORS 314.410(7) permits the Department and a taxpayer to agree in writing to extend the period of time prescribed "for giving of notice of deficiency or of assessment." After a notice of deficiency is issued, the Department must mail the notice of assessment "within one year from the date of the notice of deficiency unless an extension of time is agreed upon as described in subsection (7) of this section." ORS 314.410(5). That is the period of assessment.

*Olympia Brewing v. Dept. of Rev.*, 7 OTR 301, 305 (1977), *aff'd* 284 Or 669, 588 P2d 30 (1978), illustrates this distinction. In that case, the Department mailed notices of deficiency and proposed assessment to the taxpayer on April 22, 1974. *Id.* at 302. The Department failed to issue notices of assessment within 12 months of those notices of deficiency. *Id.* at 305. On August 6, 1975, the Department "again mailed notices of deficiency and proposed assessment for precisely the same tax years 1966 to 1972." *Id.* at 303. The second notices were identical to the first, except for the date. *Id.* On June 30, 1976, the Department mailed the taxpayer notices of assessment for the tax years at issue. *Id.* at 304. The taxpayer appealed, "contending that the notices had not been lawfully issued within the time limitations set out in ORS 314.410." *Id.* The court held that the second notices were "void." *Id.* at 305. Even though the second notices "were made within the three-year period described in ORS 314.410(1), * * * they could only have been made for the purpose of extending the period of assessment with respect to the notices of April 22, 1974, contrary to the legislative policy expressed in ORS 314.405(1)(c)."[3] *Id.*

/ / /

---

[3] *Former* ORS 314.405(1) is the predecessor statute to ORS 305.265. *See Faris*, 345 Or at 102.

The auditor in this case was concerned about the period of limitation for giving notice of deficiency, not the deadline for mailing the notice of assessment. Indeed, the deadline for mailing the notice of assessment did not begin to run until the Department issued the Notice of Deficiency on July 24, 2015. The court finds that the Department did not issue the Notice of Deficiency for purposes of extending the period for assessment.

B.      *Good Faith*

Plaintiffs contend that, contrary to the certification, the auditor did not issue the Notice of Deficiency in good faith. The phrase "good faith" is not defined in ORS 305.265. Neither party identified any case law from this court defining "good faith." Plaintiffs provided definitions of "good faith" by Oregon courts in other contexts. (Ptfs' Mot at 3.) Defendant did not offer an alternative definition of "good faith." (*See* Def's Cross-Mot at 6.)

1.      *Meaning of "good faith" in ORS 305.265(2)(c)*

"In interpreting a statute, the court's task is to discern the intent of the legislature." *PGE v. Bureau of Labor Industries*, 317 Or 606, 610, 859 P 2d 1143 (1993) (citing ORS 174.020). The legislative intent is determined first from the text and context of the statute. *PGE*, 317 Or at 611; *State v. Gaines,* 346 Or 160, 171, 206 P 3d 1042 (2009). "[W]ords of common usage typically should be given their plain, natural, and ordinary meaning." *PGE*, 317 Or at 611. The court is mindful of the "statutory enjoinder not to insert what has been omitted, or to omit what has been inserted." *Id*; ORS 174.010. The court may consider legislative history where it "appears useful to the court analysis." *Gaines*, 346 Or at 172.

"When the legislature has not defined a word or a phrase, we assume, at least initially, that the word or phrase has its ordinary meaning, except when the words are 'terms of art' * * * drawn from a specialized trade or field." *Powerex Corp. v. Dept. of Rev.*, 357 Or 40, 61, 346

P3d 476 (2015) (citation omitted). With "terms of art," Oregon courts "look to the meaning and usage of those terms in the discipline from which the legislature borrowed them. So, for example, when a term is a legal one, [courts] look to its 'established legal meaning' as revealed by, for starters at least, legal dictionaries." *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296, 337 P3d 768 (2014) (citation omitted).

The "good faith" certification requirement first appeared in the predecessor statute to ORS 305.265, *former* ORS 314.405, which was enacted in 1957.[4] "In interpreting the words of a statute enacted many years ago, we may seek guidance from dictionaries that were in use at the time." *State v. Perry*, 336 Or 49, 53, 77 P3d 313 (2003). *Webster's New International Dictionary* 1078 (2d unabridged 1950) defined "good faith" as "[s]incere integrity in profession and performance where an obligation of loyalty is involved." *Black's Law Dictionary* 822 (4th ed 1951) defined "good faith" as:

> "Honesty of intention, and freedom from knowledge of circumstances which ought to put the holder upon inquiry. * * * An honest intention to abstain from taking any unconscientious advantage of another, even through technicalities of law, together with absence of all information, notice, or benefit or belief of facts which render transaction unconscientious."

(citations omitted). Both definitions of "good faith" include a component of honesty and integrity. The technical definition found in *Black's Law Dictionary* indicates "good faith" also means without knowledge of circumstances that require further investigation or inquiry.

    2.       *Whether the Notice of Deficiency adjustments were made in good faith*

Plaintiffs argue that the auditor failed to act in good faith when he set a deadline of July 8, 2015, for Plaintiffs to submit additional documents, but failed to look at the documents

---

[4] *Former* ORS 314.405(1) (1957) stated, in part, that "[e]ach notice of deficiency and proposed assessment shall bear a certificate by the auditor who audited the return that he has audited the return and that the proposed adjustments to the return are made in good faith and not for the purpose of extending the period of assessment."

they provided "until July 17, his last day to submit a final auditor's report" at which point he "realized that it was too late to make a good faith consideration of the evidence presented to him." (Ptfs' Mot at 4.) Plaintiffs argue that "the auditor's notes clearly indicate that he did not have time [to] consider the evidence available." (Ptfs' Resp at 6, citing Ex 20.)

The court agrees with Plaintiffs' characterization of the events of June and July 2015. The stipulated facts and exhibits reveal that the auditor issued a Proposed Auditor's Report on June 24, 2015, and provided Plaintiffs with a deadline of July 8, 2015, to submit additional documentation. Plaintiffs complied with the auditor' deadline: on July 7, 2015, they submitted a detailed letter and 70 pages of additional documentation, primarily pertaining to the home basis issue. The auditor's notes state that he told Plaintiffs' counsel in a July 17, 2015, phone call that "some items in the auditor's report may need to be corrected"; that he did not have time to review the documentation they provided; and that, if Plaintiffs "would not agree to another extension of the Period of Limitation for Issuing a Notice of Deficiency, some issues would have to be addressed through the administrative appeals process." (Stip Facts at ¶41.) As Plaintiffs noted, it is evident that the auditor was in fact unable to consider most of their documentation given that the Auditor's Report issued July 17, 2015, "contains the exact same language" with respect to Plaintiffs' home basis as the Proposed Auditor's Report issued June 24, 2015.[5] (Ptfs' Resp at 1, comparing Ex 18 at 6 with Ex 21 at 6.)

At least one of the adjustments in the Notice of Deficiency – the adjustment to Plaintiffs' home basis – was made despite the fact that the auditor knew Plaintiffs had timely submitted

/ / /

---

[5] Defendant's Auditor's Report issued July 17, 2016, included the following changes: the allowed mortgage interest was increased by $110; the allowed miscellaneous itemized deductions were decreased by $2,295; and expenses for tax preparation fees and a safe deposit box were allowed. (Ex 21 at 3, 6,7.)

additional documentation in support of their basis. Thus, the auditor had knowledge of circumstances requiring further investigation and failed to undertake that investigation.

The Department argues that the auditor had insufficient time to review Plaintiffs' documentation due to Plaintiffs earlier failures to timely provide requested documentation. (*See* Def's Cross-Mot at 8.) The Department notes that the auditor had previously requested information in August, September, and October 2014, and in February 2015. (*Id.* at 8-9.) The Department acknowledges that Plaintiffs provided "substantial supporting documentation at the March 16, 2015, audit meeting" but "did not include records to substantiate the basis in their home." (*Id.* at 9.) The auditor "requested that information in a June 9, 2015, letter." (*Id.*) In the Department's view, Plaintiffs "had ample opportunity to provide documentation substantiating their claimed deductions. When they did, the department considered their evidence and made appropriate adjustments." (*Id.* at 10.)

Plaintiffs respond that, "[t]o the extent that there were timing issues caused by Plaintiffs, these were addressed by the agreement to extend the assessment statute on February 23, 2015." (Ptfs' Resp at 4.) Plaintiffs concede that, had they "missed [the July 8, 2015,] deadline and submitted additional documentation on July 17 * * * the auditor would have been justified in issuing [a Notice of Deficiency] without considering that documentation."[6] (*Id.* at 3.)

It is true that Plaintiffs failed to submit documentation in response to several of the auditor's requests in 2014 and one in 2015. However, as Plaintiffs noted, they agreed to extend the period of limitation, presumably in order to receive another opportunity to comply with the auditor's document requests. Ultimately, the court does not find that history relevant to the

---

[6] The court agrees with Plaintiffs and observes that there may be other circumstances in which an auditor is justified in failing or refusing to review documents timely submitted by a taxpayer. For instance, if a taxpayer's documents are particularly voluminous, the auditor may be justified is requesting that the taxpayer grant the Department more time to review the taxpayer's documents.

auditor's failure to consider the documents Plaintiffs submitted on July 7, 2015. The auditor invited Plaintiffs to submit additional documentation by July 8, 2015. The auditor failed to consider the documentation Plaintiffs submitted by that date because he was away on a planned vacation. The auditor knew he would not be available to review any information submitted by Plaintiffs during his planned absence, yet he failed to make arrangements for another auditor to review Plaintiffs' documentation. The key fact here is that Plaintiffs' additional documentation was timely submitted in accordance with a deadline set by the auditor.

By analogy, the Oregon Supreme Court has held that the Tax Court is required to consider the evidence it admits. *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). In a case involving the taxpayer's allowable payroll deductions, the Tax Court had refused to examine the taxpayer's new evidence, even though it admitted the evidence. *Id.* at 263-64. The Tax Court stated it "did not and will not audit every Form 1099 submitted by [Taxpayer]. It is satisfied that [Taxpayer] does not have sufficient cancelled checks to document the claimed expenses." *Id.* at 264 (citation and internal quotations marks omitted). The Oregon Supreme Court agreed with the Tax Court that the taxpayer's records were "disorganized, incomplete, frequently unidentified and so mixed with [the taxpayer's] personal expenses that it [was] impossible for even [the taxpayer] to be certain whether some expenses were for business or otherwise." *Id.* at 162. Nevertheless, it held that the taxpayer's "evidence was presented and received. Therefore, it was the Tax Court's obligation to consider it." *Id.* at 266.

The legislature has provided the Department with extensive authority to examine taxpayers' books, papers, and records, and to take testimony from taxpayers and other individuals. *See* ORS 314.425. The Department may exercise its authority using subpoenas and court orders. *See id.* Given that the legislature has entrusted the Department with that authority

and has required notices of deficiency to be issued in "good faith," it is reasonable to conclude that the Department must consider the documentation and other evidence it timely receives pursuant to its own requests for information. When the Notice of Deficiency was issued, the auditor knew that Plaintiffs had timely submitted additional documentation, but issued the Notice without reviewing that documentation. The adjustments were not, therefore, in good faith.

C.      *Burden of Proof, Other Remedies*

The Department argues that Plaintiffs' position in this case is a "reversal of the burden of proof and is contrary to law." (Def's Cross-Mot at 4.) It asserts that it properly issued the Notice of Deficiency because Plaintiffs did not meet their burden of proof. (*See id.* at 4-5.) It is true that deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). To the extent that the auditor concluded that Plaintiffs had failed to adequately substantiate their claimed deductions, he was entitled to adjust those deductions. However, the court does not agree that an auditor's failure to consider documents is equivalent to an auditor's finding that the documents provided are insufficient or unpersuasive. In this case, the auditor admitted he was unable to consider the documentation provided; thus, he could not have concluded that Plaintiffs failed to meet their burden of proof. That conclusion does not reverse the burden of proof. *Compare Reed*, 310 Or at 265 ("Although the burden of proof falls on the taxpayer to demonstrate that the Department's earlier decision was wrong, a trial de novo requires the Tax Court to consider all properly admitted evidence and reach its own independent conclusions.")

The Department argues that Plaintiffs had a remedy before the Notice of Deficiency was issued – they could have agreed to extend the period for assessment under ORS 305.265(8) – and

they had a remedy after the Notice was issued – they could have filed a written objection or requested a conference. (Def's Cross-Mot at 3-4.) The parties agree that taxpayers are not required to agree to extend the period of limitation for giving notice of deficiency. (Ptfs' Resp at 6; Def's Cross-Mot at 5, n2.) With respect to Plaintiffs' appeal options after the Notice of Deficiency was issued, OAR 150-305.265(15)(1) states that "[a] taxpayer may waive a conference or written objection and request immediate assessment of a deficiency for purposes of filing a direct appeal with the Magistrate Division of the Oregon Tax Court." That is the course of action Plaintiffs chose in this case. Plaintiffs were not obliged to participate in the Department's appeal process after the Notice of Deficiency was issued. The court agrees with Plaintiffs that the availability of those options is irrelevant to the issue of whether the Notice of Deficiency adjustments were made in good faith. (*See* Ptfs' Resp at 3.)

### III. COSTS AND DISBURSEMENTS FACTS AND ANALYSIS

Plaintiffs filed a Statement requesting an award of $252 for their filing fee. The Department did not file an objection to Plaintiffs' Statement. The Magistrate Division has discretionary authority under ORS 305.490(2) to award costs and disbursements to the prevailing party. *Wihtol I. v. Dept. of Rev.*, 21 OTR 260, 267–68 (2013); TCR-MD 16. Although TCR-MD 16 does not define "prevailing party," this court has looked to the definition of "prevailing party" found in ORS 20.077(2), regarding making an award of attorney fees, for guidance. *Stade v. Dept. of Rev.*, TC-MD 150369N, WL 282206 at *5 (Jan 21, 2016). ORS 20.077(2) defines prevailing party as "the party who receives a favorable judgment or arbitration award on the claim." Thus, the court must determine the prevailing party on a "claim-by-claim basis," weighing "what was sought by each party against the result obtained." *Stade*, 2016 WL 282206 at *5 (citations and internal quotation marks omitted).

In this case, Plaintiffs challenged whether the Department's Notice of Deficiency complied with ORS 305.265(2)(c). The court concluded that the notice did not comply with that statute and held the notice was invalid as a result. Plaintiffs are the prevailing party.

The next question is whether the court should exercise its discretion to award costs and disbursements to Plaintiffs. This court has identified several considerations relevant to its decision to award costs, including whether the originally filed return was accurate, whether the taxpayer availed himself of any administrative appeal available to him, and "whether the outcome on appeal involved wins and losses for both parties." *Stade*, 2016 WL 282206 at *5; *see also Wihtol v. Multnomah County Assessor,* TC-MD 120762N, WL 274126 at *5 (Jan 24, 2014). Here, Plaintiffs elected not to file a written objection or request a conference with the Department. Ordinarily, that fact might weigh against a cost award. This case presents an exception given the dispositive issue: whether the Department's Notice of Deficiency adjustments were made in good faith. Plaintiffs challenged the notice itself, rather than the adjustments. Although Plaintiffs did not file an objection or request a conference, their counsel sent a letter to the Department asserting that the Notice of Deficiency was not issued in good faith and requesting that the auditor consider issuing an amended Notice of Deficiency. On that basis, the court is satisfied that Plaintiffs attempted to resolve the matter with the Department prior to filing this appeal. Plaintiffs' request for costs and disbursements is granted.

IV. CONCLUSION

After careful consideration, the court finds that the July 24, 2015, Notice of Deficiency adjustments were not made in good faith because the auditor made the adjustments despite knowing of circumstances requiring further investigation and because the auditor failed to undertake that investigation by considering documentation timely submitted by Plaintiffs. The

July 24, 2015, Notice of Deficiency is invalid. Plaintiffs' Motion for Summary Judgment is granted and Defendant's Cross-Motion is denied. Plaintiffs' request for cost and disbursements is granted. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' Motion for Summary Judgment is granted and Defendant's Cross-Motion is denied.

IT IS FURTHER DECIDED that Plaintiffs' request for costs and disbursements in the amount of $252 is granted.

Dated this ____ day of September 2016.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on September 15, 2016.*